UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVID N.[1] )<br>)<br>    **Plaintiff,** )<br>)<br>vs. )<br>)<br>COMMISSIONER of SOCIAL )<br>SECURITY, )<br>)<br>    **Defendant.** ) | Civil No. 3:20-cv-00403-GCS |

# MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits ("DIB").[2]

## PROCEDURAL HISTORY

Plaintiff applied for DIB on November 17, 2016 alleging disability as of September 2016. After reconsideration, the Commissioner issued a Notice of Disapproved Claims dated June 13, 2017. After holding an evidentiary hearing in November 2018, Administrative Law Judge ("ALJ") Jason Panek denied the application on February 27,

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* FED. R. CIV. PROC. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. § 636(c). *See* (Doc. 20).

2019. (Tr. 27-46). On March 6, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final agency decision subject to judicial review. (Tr. 1-3). Plaintiff exhausted administrative remedies and filed a timely complaint with this Court.

## ISSUES RAISED BY PLAINTIFF

Plaintiff raises the following issues:

1. The ALJ failed to obtain a medical opinion on which to base the RFC assessment.

2. The ALJ failed to include limitations from moderate deficiencies in concentration, persistence, or pace in the RFC assessment.

3. The ALJ failed to fully develop the record.

## APPLICABLE LEGAL STANDARDS

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of

specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his former occupation? and (5) Is the claimant unable to perform any other work? *See* 20 C.F.R. § 404.1520.

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. A negative answer at any step, other than at step 3, precludes a finding of disability. The claimant bears the burden of proof at steps 1–4. Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *See Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

It is important to recognize that the scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Accordingly, this Court is not tasked with determining whether or not Plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *See Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does *not* reweigh evidence, resolve conflicts, decide

questions of credibility, or substitute its own judgment for that of the ALJ. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Though judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

## THE DECISION OF THE ALJ

The ALJ followed the five-step analytical framework described above. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 20, 2016. Second, the ALJ found that Plaintiff had the severe impairment of borderline intellectual functioning as it significantly limited the ability to perform basic work. Third, the ALJ found that Plaintiff's "impairments considered singularly, in combination with SSR 02-1p, do not meet or equal any physical listing, including the listings under Category 4.00. This is because the record fails to reveal, for example, the requisite test results." (Tr. 22). Next, the ALJ found that Plaintiff has the residential functional capacity ("RFC") "to perform a full range of work at all exertional levels but with the following non-exertional limitations: [c]an understand and remember short, simple instructions and can attend to and carry out simple, routine tasks." Additionally, the ALJ found that Plaintiff could not perform his past relevant work as kitchen worker (dishwasher) or delivery driver. (Tr. 30). However, the ALJ found that Plaintiff could work as a racker, stringer, or picking table worker (all unskilled, light work) which jobs exist in significant numbers in the national economy. (Tr. 31). The Appeals Council denied Plaintiff's request

for review.

## THE EVIDENTIARY RECORD

The Court has reviewed and considered the entire evidentiary record in preparing this Memorandum and Order. The following summary of the record is directed to the points raised by Plaintiff.

**1.     Evidentiary Hearing**

Plaintiff was represented by an attorney, Dawna A. Hale, at the hearing in November 2018. (Tr. 14-71). At this hearing, Plaintiff testified as did Plaintiff's sister, Sarah Crause, a special education teacher. (Tr. 17). The vocational expert ("VE"), Dr. Trya Watts, also testified. *Id.*

Plaintiff testified that he lives by himself in an apartment in Alton, Illinois; that he works 10 hours per week at $10 an hour delivering medication to hospice patients and other individuals in the Alton/Godfrey, Illinois area; and that he has a driver's license with no restrictions, drives his own car and is able to pay the rent with some financial help from family. Plaintiff is a high school graduate. During his junior and senior years in high school, Plaintiff only took special education classes as he could not keep up during his freshman and sophomore years. (Tr. 44- 47).

From January 2011 to September 2016, Plaintiff worked at the Golden Corral restaurant as a dishwasher. He was fired from that position when the restaurant changed hands from Kennedy & Crause (Plaintiff's sister's husband's family) to RFR, Inc. (Tr. 48-

49). Prior to that employment, Plaintiff worked 16 years at Central Avenue Auto Parts delivering auto supplies from the store to garages. Plaintiff got this job through his dad, a customer of the store. At this job, Plaintiff drove a company pickup truck. (Tr. 50).

Plaintiff also testified he is disabled and cannot work full-time because he had a heart attack three years ago. (Tr. 52). The heart attack slows him down as he easily gets tired. *Id.* Currently, Plaintiff does not have any problems or chest pain. *Id.*

Ms. Crause, Plaintiff's sister, testified that she sometimes sees him weekly, every couple weeks, or every three weeks. Plaintiff used to come to her house weekly to do laundry and have dinner, however, Plaintiff stopped coming over to her house. Plaintiff told Ms. Crause that he was doing laundry at a friend's house. Ms. Crause also noted that she buys Plaintiff new clothes because his clothes smell. (Tr. 54). Ms. Crause indicated that if she pushes Plaintiff too hard, he shuts down and gets defensive. When Ms. Crause allowed Plaintiff to have possession of her checkbook (when his mother was alive, his mother did not allow him to have the checkbook), he spent $900 in two and a half weeks, and Ms. Crause had to cover the checks. She further testified that discussing finances with Plaintiff causes him to shut down, that he will not speak to her, and that he has no concept of money. (Tr. 55-56).

Ms. Crause thinks that Plaintiff has deficits in adaptive behavioral skills, issues with self-direction, personal hygiene, and social communication. (Tr. 61). Plaintiff was fired from his job at the Golden Corral for sending out dirty dishes to the customers. (Tr.

60). Ms. Crause thinks that Plaintiff could work full-time only with multiple prompts a day, as he has difficulty following anything beyond two-step directions.

Ms. Crause also said that he has bad personal hygiene, that his breath stinks, and that he does not communicate well. (Tr. 57). In 2015, after their mother passed, Plaintiff's apartment was not clean; their mother used to clean the apartment. As a result, Ms. Crause called Plaintiff's social worker, and the social worker took care of things at the apartment.[3]

Plaintiff sees his social worker every two weeks to touch base, to discuss hygiene, and to obtain his medication. (Tr. 62). The social worker set up weekly delivery for his medication. (Tr. 63). Ms. Crause balances Plaintiff's checkbook, but Plaintiff takes his checkbook to the social worker, and together they write out the bills because that is what Plaintiff wants. *Id.*

Plaintiff will golf with Ms. Crause's husband. (Tr. 65-66). Plaintiff also participates in church activities. *Id.*

Dr. Watts classified Plaintiff's past work as follows: (1) "kitchen helper DOT code 318.687-010, SVP of 2, which is unskilled, a strength of medium[;]" and (2) "delivery driver DOT code 292.353.010, SVP of 3, which is semi-skilled and a strength of medium." (Tr. 68). Dr. Watts testified that a hypothetical, younger individual with a high school education and the past work consistent with what was described for the Plaintiff could

---

[3] Ms. Crause said that the apartment was in disarray and smelled. The apartment also had feces on the floor and urine around the toilet. (Tr. 58).

not perform the Plaintiff's past work. (Tr. 68-69). Dr. Watts's conclusion was also based on the fact that this younger individual could "understand and remember no more than short and simple instructions[,]" would be "limited to attending to and carrying out simple/routine tasks[,]" and would not be "subject to any exertional limitations[.]" *Id.* Dr. Watts noted, however, that this hypothetical individual could perform other jobs. (Tr. 69). Specifically, such an individual could work as a racker, stringer or picking table worker (all unskilled, light work), and such jobs did exist in significant numbers in the national economy. (Tr. 69-70). Nevertheless, Dr. Watts testified that competitive work does not exist if an individual required re-direction by a supervisor four times in an eight-hour workday to remain on task. (Tr. 70).

    **2.**    **Relevant Medical Records and Evidence**

**Dr. Frederic Golden, Ph.D.**

Dr. Golden evaluated Plaintiff on February 25, 2015 and on March 9, 2015. Plaintiff was referred to Golden by his brother-in-law, James Crause, to determine Plaintiff's potential eligibility for disability insurance benefits. Golden administered the Wechsler Adult Intelligence Scale – Revised and the Inventory for Client and Agency Planning tests. Plaintiff's Full-Scale IQ score was 84, which means that Plaintiff functions intellectually at the upper limit of the Borderline range. Plaintiff's Overall Adaptive Behavior Age Equivalent was 9 years and 9 months. Plaintiff also had a corresponding ICAP Service Level score of 8, which means there is a need for limited personal care

and/or regular supervision. Golden summarized as follows:

> David Norris is a 45-year old man, who is not viewed to be developmentally disabled. There are some deficits in self-direction and learning. David received some special education remediation as a youngster. He graduated from Alton High School in 1988. David does require some assistance to maintain the highest possible quality of life. David needs some help to manage his health, finances, and overall life circumstances. David is competent enough to sign over his Power of Attorney if he so wishes.

(Tr. 258-259).

### Dr. Stephen G. Vincent, Ph.D.

Dr. Vincent saw Plaintiff on March 8, 2017 for a mental status examination at the request of Defendant. Vincent reviewed Golden's report. Vincent noted that Plaintiff's "personal hygiene and grooming were intact[.]" (Tr. 340). He also noted that Plaintiff seemed "somewhat slow and concrete requiring repetition and simplification of test instructions," but that Plaintiff "had no difficulties responding to all test demands." *Id.* Vincent believed Plaintiff had the ability to manage his own funds. (Tr. 342). Plaintiff reported that his "memory is poor." Vincent also noted that "he did have difficulties with staying focused on task, particularly in regards to processing sequential information compromising working memory and problem solving abilities limiting his capacity to initiate, organize, sequence and plan tasks resulting in being error prone with poor self-correction." (Tr. 341). Dr. Vincent summarized and concluded in part:

> He does report a history of learning disabilities, having been in special education classes throughout school with a full-scale IQ in file of 84. During the examination, although somewhat concrete with his responses, he was able to respond appropriately, but responses were slow and deliberate, many times

answering in a question-like form due to fear of failure and exposure of cognitive weakness.

Lastly, Dr. Vincent's diagnostic impression of Plaintiff was borderline intellectual functioning as per his history. (Tr. 342).

**Dr. Howard Tin, PsyD**

On March 27, 2017, Dr. Howard Tin, PsyD, a state agency medical consultant employed by Defendant, found that Plaintiff had no severe mental impairment. Dr. Tin stated: "[c]laimant's allegation of the severity of the disorder is not consistent with the claimant's ability to function generally well from day to day." (Tr. 77).

**Dr. Donald Cochran, PhD**

On June 7, 2017, Dr. Donald Cochran, PhD, a state agency medical consultant employed by Defendant, likewise found that Plaintiff had no severe mental impairment and wrote: "[c]laimant's allegation of the severity of the disorder is not consistent with claimant's ability to function generally well from day to day." (Tr. 87).

ANALYSIS

First, the Court addresses Plaintiff's second argument that the ALJ failed to include limitations from moderate deficiencies in concentration, persistence, or pace in the RFC assessment.

The ALJ's RFC assessment and the hypothetical question posed to the VE must incorporate all of the limitations that are supported by the record. *See Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). This is a well-established rule. *See Stewart v. Astrue*, 561 F.3d

679, 684 (7th Cir. 2009)(collecting cases). If the ALJ finds that a plaintiff has a moderate limitation in maintaining concentration, persistence or pace, that limitation must be accounted for in the hypothetical question posed to the VE. In most cases, limiting the plaintiff to simple, repetitive tasks or to unskilled work is not sufficient to account for moderate concentration difficulties. The Seventh Circuit has clearly indicated that a limitation to simple instructions or simple, routine tasks does not adequately account for a moderate limitation in maintaining concentration, persistence, or pace. "The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010).

      Here, the ALJ found that Plaintiff had moderate limitations in his ability to understand, remember or apply information, as well as to concentrate, persist or maintain pace. Specifically, the ALJ found: "[t]he area of understanding, remembering, or applying information refers to the abilities to learn, recall and use information to perform work activities. The area of concentrating, persisting or maintaining to pace refers to the abilities to focus attention on work activities and stay on task at a sustained rate." (Tr. 22). He noted that while the step three determination is not a mental RFC assessment, the ultimate RFC assessment "reflects the degree of limitation the undersigned has found in the 'paragraph B' mental functional analysis." (Tr. 25).

      The ALJ found that Plaintiff had the RFC to perform a full range of work at all

exertional levels, but with the following non-exertional limitations: can understand and remember short, simple instructions; can attend to and carry out simple, routine tasks. (Tr. 26).

The Seventh Circuit has repeatedly held, with exceptions not applicable here, that a limitation to simple, repetitive tasks or unskilled work does not adequately account for a moderate limitation in maintaining concentration, persistence or pace. In *Stewart,* for example, the Seventh Circuit noted that "[t]he Commissioner continues to defend the ALJ's attempt to account for mental impairments by restricting the hypothetical to 'simple' tasks, and we and our sister courts continue to reject the Commissioner's position." *Stewart*, 561 F.3d at 685. The Court has reaffirmed that position several times in recent years. *See O'Connor-Spinner*, 627 F.3d at 620*; Yurt*, 758 F.3d at 857; *Varga v. Colvin,* 794 F.3d 809, 814 (7th Cir. 2015)*; Taylor v. Colvin,* 829 F.3d 799, 802 (7th Cir. 2016); *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018), as amended on reh'g (Apr. 13, 2018); *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019).

Here, the ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels but with the following non-exertional limitations: can understand and remember short, simple instructions; can attend to and carry out simple, routine tasks. (Tr. 26). That is not sufficient to account for a moderate limitation in maintaining concentration, persistence, or pace. "More to it, observing that a person can perform simple and repetitive tasks says nothing about whether the individual can do so on a

sustained basis, including, for example, over the course of a standard eight-hour work shift." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019). As the Seventh Circuit explained in a recent case:

> . . . the relative difficulty of a specific job assignment does not necessarily correlate with a claimant's ability to stay on task or perform at the speed required by a particular workplace. . . . Put another way, someone with problems concentrating may not be able to complete a task consistently over the course of a workday, no matter how simple it may be.

*Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020).

The ALJ in *Martin* adequately accounted for deficiencies in maintaining concentration, persistence, and pace by limiting the plaintiff to jobs that involve "only simple tasks with low stress, occasional changes, a flexible pace, and superficial interactions with others." *Martin*, 950 F.3d at 373. Similarly, in *Burmester*, the Seventh Circuit found no error where the ALJ limited the plaintiff to "simple, routine, repetitive tasks requiring only simple work-related decisions with few changes in the routine work setting and no more than occasional interaction with supervisors, coworkers, and the general public." *Burmester*, 920 F.3d at 509. The reviewing doctor in that case "stated in the 'Statement of Work Capacity' portion of his assessment that Burmester had the 'ability to understand, remember and carry out simple instructions subject to physical limitations,' that 'maintaining concentration and attention should be manageable' and that she 'should be able to withstand routine work stress and adapt to typical job site changes.'" *Burmester*, 920 F.3d at 511.

Seventh Circuit precedent does not require the ALJ to use specific words to express a claimant's limitations in maintaining concentration, persistence, or pace. The Seventh Circuit, however, explained what was required when it stated the following: "[w]e decline to provide a glossary of adjectives for use in RFC determinations. What we do require—and our recent precedent makes plain—is that the ALJ must account for the 'totality of a claimant's limitations' in determining the proper RFC." *Martin*, 950 F.3d at 374.

Here, the ALJ found that Plaintiff had the severe impairment of borderline intellectual functioning based on the two psychological evaluations in evidence. Specifically, the ALJ stated that the borderline intellectual functioning "significantly" limits the ability to perform basic work activities as required by SSR 85-28. (Tr. 20). The record does contain differing findings regarding this issue. On the one hand, both of Defendant's medical consultants, Drs. Tin and Cochran, found that Plaintiff did not have a severe mental impairment. Drs. Golden and Vincent, on the other hand, diagnosed Plaintiff as having borderline intellectual functioning. In fact, Dr. Golden found Plaintiff had some deficits in self-direction and learning. Likewise, Dr. Vincent observed that Plaintiff had difficulties staying focused on task, that Plaintiff required repetition and simplification of test instructions, and that Plaintiff was slow.

In light of the above evidence in the record, the Commissioner's reliance on *Jozefyk v. Berryhill*, 923 F.3d 492 (7th Cir. 2019) is misplaced. In *Jozefyk*, the Seventh Circuit rejected

the plaintiff's argument that it was error to omit a reference to a moderate limitation in concentration, persistence, or pace from the RFC assessment and hypothetical question where "according to the medical evidence, his impairments surface only when he is with other people or in a crowd." *Jozefyk*, 923 F.3d at 498. *Jozefyk*, however, is distinguishable from the instant case on that very basis. The Seventh Circuit explained as follows in a later case:

> In closing, we owe a word to the Commissioner's reliance on our recent decision in *Jozefyk v. Berryhill*, 923 F.3d 492 (7th Cir. 2019). We do not read *Jozefyk* to save the shortfalls in the ALJ's analysis here. In *Jozefyk*, we determined that any error in formulating the RFC was harmless because the claimant had not testified about any restrictions in his capabilities related to concentration, persistence, or pace, and the medical evidence did not otherwise support any such limitations. 923 F.3d at 498. As the Commissioner concedes, the facts here are different. The medical evidence plainly shows, and the ALJ recognized, that Crump suffers from CPP limitations.

*Crump*, 932 F.3d at 571. Here, of course, there is testimony and medical evidence supporting that Plaintiff had trouble staying on task and had difficulty focusing and concentrating.

The Commissioner fails to address the central point here, which is that, based on the record, the ALJ found that Plaintiff has moderate limitations in maintaining concentration, persistence, or pace, but failed to account for that limitation in the RFC assessment.[4]

The ALJ's error requires remand. "If a decision 'lacks evidentiary support or is so

---

[4] As the Court finds that the ALJ committed error regarding the RFC assessment requiring remand, the Court need not address Plaintiff's other two arguments.

poorly articulated as to prevent meaningful review,' a remand is required." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (internal citation omitted).

This Memorandum and Order should not be construed as an indication that the Court believes that Plaintiff was disabled during the relevant period, or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## CONCLUSION

The Commissioner's final decision denying Plaintiff's application for disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence <u>four</u> of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment in favor of Plaintiff.

**IT IS SO ORDERED.**

**DATED: May 28, 2021.**

Digitally signed by Judge Sison 2
Date: 2021.05.28 10:18:42 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**